IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| EDWARD JASPER CROUCH, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 4:04-cv-96 |
| JEFF ELLIOTT, *et al.*, | ) | |
| Defendants | ) | |

## **MEMORANDUM OPINION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983. Currently pending is the motion for summary judgment of the defendants [Court File #33]. Plaintiff has failed to respond to the pending motion in a timely manner and is therefore deemed to have waived any response. Rule 7.2, Local Rules for the United States District Court for the Eastern District of Tennessee. For the reasons that follow, the motion for summary judgment will be granted and this action will be dismissed.

# I.

## *Factual Background*

Plaintiff's complaint contains the following factual allegations. On the night of October 16, 2004, plaintiff and his wife were peacefully traveling down a private right-of-way at about 11:00 p.m. They were followed at a distance of 200 or 300 feet by a car with blue lights on. Plaintiff and his wife then pulled into plaintiff's driveway.

The car with the blue lights pulled up across plaintiff's driveway and two unidentified individuals exited the car and came toward plaintiff and his wife. Plaintiff asked the individuals to identify themselves. One indicated that his name would be in the report and the other said nothing. The individual who spoke was later identified as Coffee County Sheriff's Deputy Jeff Elliott. The individual who said nothing was later identified as Coffee County Sheriff's Deputy James Sherrill.

The defendant Elliott asked for plaintiff's drivers license and plaintiff complied. Officer Elliott told plaintiff that he was going to take him to jail and should have taken plaintiff to jail the last time he stopped him.

Officer Elliott then proceeded to perform an "unlawful search" of plaintiff's person, forcing plaintiff to empty his pockets. Elliott found nothing illegal on plaintiff's person.

Defendant Sherrill placed handcuffs on plaintiff and placed him in the back seat of the police car. Elliott asked plaintiff's wife if he could search plaintiff's automobile and she said no. Elliott then ordered plaintiff's wife to get out of his way and Elliott and Sherrill performed an "illegal search" of plaintiff's automobile without his consent. They found nothing illegal during the search.

Elliott and Sherrill then transported plaintiff to the Coffee County Jail at about 11:30 p.m. Defendant Jane Doe #1 demanded plaintiff answer personal questions and sign papers and she committed "a theft" when she stole plaintiff's photograph without a court order or plaintiff's consent. In an attempt to force the plaintiff to answer personal questions and sign documents against his will, defendants John Doe #1, John Doe #2, and John Doe #3 deposited the plaintiff into a concrete room with a steel door called the "Drunk Tank," even though plaintiff was not drunk.

Defendants John Does #1, #2 and #3 returned to the Drunk Tank after about five minutes and asked plaintiff if he was willing to cooperate with their

3

demands, and he said no. They then demanded that the plaintiff take off his shirt and shoes. Defendants John Does #1, #2 and #3 then took plaintiff's shirt and shoes and left the area, leaving the plaintiff without proper protection from the very cold air blowing into the Drunk Tank.

Plaintiff was left in the Drunk Tank for approximately 12 hours, suffering from exposure to the very cold air and possible exposure to "all kinds of diseases, from blood splatters, which were left on the floors and walls, from former detainees." Plaintiff and his wife were not engaged in any illegal activity, either immediately prior to or at the time plaintiff was detained, nor was he ever told that he was under arrest or read any *Miranda* rights. Nor was plaintiff taken before any judge or magistrate prior to being held for 12 hours.

Plaintiff contends that defendant Coffee County has a custom or policy which neglects to train, supervise or control its officers to prevent them from unlawfully using their authority.

Plaintiff later amended his complaint to allege that it was John Doe #5 who placed handcuffs on him and placed him in the back of the car. The amended complaint also names 22 Coffee County commissioners as defendants, although it

4

does not appear that any of the county commissioners have been served with a copy of the summons and complaint.

In support of their motion for summary judgment, the defendants have submitted undisputed deposition testimony of plaintiff, as well as that of Officers Sherrill and Graves, together with an affidavit of Officer Graves. Those sources provide the following facts relevant to plaintiff's arrest and incarceration.

Plaintiff is 55 years old. He describes himself as a "non-resident" of Tennessee and states that he has a "place," not a street address. In his deposition he testified as follows:

> Q. What is your street address?
>
> A. I don't actually have a street address. The lot address is 331 General Bragg. I am a non-resident of the State of Tennessee.
>
> Q. What do you mean by that, you are a non-resident?
>
> A. I am a non-resident of the State of Tennessee.
>
> Q. Meaning you live here -
>
> A. I'm non-commercial.
>
> Q. I'm sorry?
>
> A. I'm non-commercial.

5

> Q. What's non-commercial mean?
>
> A. Well, basically, that's what it means. I'm not under the obligations of the Bankruptcy Act of 1933. I don't claim that part.

Plaintiff apparently believes that being a non-resident or "commercial" means that he escapes the statutory requirements regarding his vehicle. He testified:

> Q. Ok. As being a non-resident, what does not apply to you that, say, would apply to me being a resident?
>
> A. Your commercial statutes.
>
> Q. What commercial statutes in particular?
>
> A. Any commercial statutes. I don't do commercial - anything commercial any more. I am non-commercial. I don't - I don't have commercial licenses. I don't have commercial anything.
>
> Q. You don't have a drivers license?
>
> A. No, sir.

Plaintiff explains that the commercial statutes do not apply to him because he does not haul passengers or cargo. He also states another reason for believing that he does not need a drivers license as follows:

> Q. On the evening of your arrest on October 16, 2004, were you driving your van?
>
> A. No, sir.

6

Q. Who was driving it?

A. Nobody.

Q. Well, wasn't your - you and your wife were in the van, were you not?

A. Yes, sir.

Q. Had you been driving at one time?

A. Well, the van was commercial at one time before I bought it. It's been driven. Let's say that. But I don't drive. I was not driving. I was traveling.

Q. Alright. Were you traveling in your van?

A. Yes, sir.

Q. Were you in the seat behind the steering wheel on October 16, 2004?

A. Yes, sir.

Q. Ok. And what is the distinction in your mind between "driving" and "traveling"?

A. Well, if you read the Constitution and you read the definition of the right of liberty, which is the only right you've got under the Constitution. There is nobody has constitutional rights [sic]. You have the right to travel. ... Only when you go into interstate commerce, intrastate commerce and commercial mode do you need drivers license. When you go to driving, then you need a drivers license. All of your traffic laws are in commercial and all your statutes. They go under the commercial clause, coming back to the Bankruptcy of 1933 [sic].

Q. Then let me ask you some earlier questions now that I know the distinction between driving and traveling. Do you still travel in your van?

7

A. Yes, sir.

Plaintiff has previously held drivers licenses issued by the States of Louisiana, Georgia, Florida, Tennessee, Washington and Maine. However, the last time he had a valid license was one issued by the State of Washington that expired six or seven years ago. Plaintiff does not only not have a drivers license, but he also does not have a title for his van. He believes that if the van was titled it would be equivalent to giving it to the State of Tennessee. According to the plaintiff, the necessity of titling his van does not apply to him because, again, it has to do with a commercial statute.

On the evening of August 16, 2004, plaintiff and his wife left a restaurant within his subdivision to his "position" on General Bragg Drive. Deputy James Sherrill, who was patrolling the neighborhood, noticed a broken tail light on plaintiff's vehicle and initiated his blue lights and siren. Plaintiff did not immediately pull over, but instead continued to drive past approximately three streets and then pulled into his own driveway. When Sherrill approached plaintiff's vehicle, plaintiff was already outside of it. Sherrill asked to see plaintiff's drivers license, whereupon plaintiff asked Sherrill if he saw anything commercial about his vehicle. Plaintiff's failure to produce a drivers license provided grounds for his arrest.

8

Deputy Sherrill looked inside the plaintiff's van and saw that it was filled with trash. He did not perform a search of the van. Plaintiff was taken to the Coffee County Jail following his arrest. Although plaintiff was not physically taken before a judge for a probable cause determination, Deputy Sherrill did present plaintiff's case to a judicial commissioner, who drafted and signed a warrant.

By his own admission, plaintiff would not cooperate with officers during the booking process. He testified as follows:

> Q. Did anyone ask you booking questions when you were brought into the jail?
>
> A. They asked me all kinds of questions.
>
> Q. Like what?
>
> A. Well, they wanted to know where I was born and when I was born and how I was born. Probably 50 others. I don't remember what all they asked.
>
> Q. Did they ask your name?
>
> A. Yes they did.
>
> Q. Did you give them your name?
>
> A. No, sir.
>
> Q. Did they ask you your date of birth?
>
> A. Yes, sir.
>
> Q. Did you give them your date of birth?

9

> A. No, sir.
>
> Q. Did you respond to any of their questions?
>
> A. No, sir.
>
> Q. Why not?
>
> A. Except told them I am going to sue them.
>
> Q. You told them you were going to sue them?
>
> A. Uh huh. I told them I was going to sue them.
>
> Q. Why didn't you answer any of their questions?
>
> A. Because I had been falsely abducted. Kidnapped.

As a result of plaintiff refusing to answer the routine booking questions, the jailers on duty took plaintiff to a holding cell used as a "drunk tank." Rules of the Tennessee Corrections Institute require jailers to put an arrestee in an observation room until they obtain necessary booking information. They are required to hold arrestees until they get the proper information. Plaintiff's shoes would have been removed per standard jail policy and procedure. Plaintiff complained bitterly about the temporary cell, saying that he was subjected to psychological trauma as a result of the defendants trying to extract information from him and then forcing him into the room that was "just above freezing." This cell, however, is on the same ventilation system as the rest of the jail and is controlled by a single thermostat. Once it is set,

it is set throughout the building. Plaintiff made bond in just over 10 hours and was released.

Although plaintiff claims he is a non-resident of the State of Tennessee, he makes certain claims about the neighborhood wherein he has his lot address. Plaintiff believes that it is a private neighborhood, not subject to the rules of the road in the State of Tennessee. Ultimately, plaintiff was convicted of driving without a license and was fined. Criminal charges against the plaintiff for evading arrest were sent before the grand jury and he was subsequently set to appear for these charges in the Coffee County Circuit Court.

II.

*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving

11

issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

***Analysis***

Initially, defendants contend that based on the unrebutted depositions and affidavits which have been submitted plaintiff simply fails to state a constitutional claim. The court agrees.

12

It is undisputed that Deputy Sherrill had probable cause to stop the plaintiff for driving with a broken tail light. Once plaintiff failed to produce his drivers license, Sherrill had grounds to arrest him pursuant to T.C.A. § 55-50-351. Further, plaintiff had no reason to believe he could disregard traffic laws with impunity as long as he did so within the confines of the Lakewood Park Subdivision. *See State v. Hiner*, 988 S.W.2d 697 (Tenn. Ct. Crim. App. 1998).

Deputy Sherrill's testimony that he did not perform a search of the plaintiff's vehicle because it was filled with trash is uncontradicted. Had he done so, that search would have been legal as incident to a lawful arrest. *State v. Cothran*, 115 S.W.3d 513, 525 (Tenn. Ct. Crim. App. 2003).

Plaintiff's argument that he was arrested without probable cause is without merit given plaintiff's admission that he was driving his van (or at least traveling in it in the driver's seat) without a valid drivers license. Crouch's claims regarding the conditions of his confinement are analyzed under Eighth Amendment precedent and applicable to plaintiff as a pretrial detainee under the Due Process Clause of the Fourteenth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The United States Supreme Court has held that the Constitution "does not mandate comfortable prisons, and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth

Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). It is beyond dispute that the conditions of confinement which plaintiff alleges here at least met "the minimal civilized measure of life's necessities." It is also clear that plaintiff would have been released sooner if he had simply not refused to answer the simple and basic booking questions.

Under the circumstances, I am of the opinion that the defendants are entitled to summary judgment on all of plaintiff's constitutional claims.

IV.

*Conclusion*

In light of the foregoing, defendants' motion for summary judgment [Court File #33] will be granted and this action dismissed.

Order accordingly.

 s/ James H. Jarvis  
UNITED STATES DISTRICT JUDGE

14